IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAURICE A. BACKUS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 06-331-SLR |
| | ) |
| THOMAS CARROLL, | ) |
| Warden, and JOSEPH R. | ) |
| BIDEN, III, Attorney General | ) |
| of the State of Delaware, | ) |
| | ) |
| Respondents.[1] | ) |

Maurice A. Backus. Pro se petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

Dated: August 29, 2007
Wilmington, Delaware

---

[1]Attorney General Joseph R. Biden, III assumed office in January, 2007, replacing former Attorney General Carl C. Danberg, an original party to this case. See Fed. R. Civ. P. 25(d)(1).

**ROBINSON, District Judge**

## I. INTRODUCTION

Currently before the court is petitioner Maurice A. Backus' ("petitioner") application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (D.I. 1) Petitioner is incarcerated at the Delaware Correctional Center in Smyrna, Delaware. For the reasons that follow, the court will dismiss petitioner's § 2254 application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In June 2001, New Castle County police obtained a warrant to search the home of petitioner's brother, Floyd Backus, a suspected cocaine dealer. Prior to executing the search warrant, the police officers involved were briefed about the situation and told that Floyd Backus and petitioner were under investigation for selling cocaine, petitioner's involvement in the drug sales had been confirmed by three controlled purchases, petitioner had been charged with weapons offenses in the past, and a reliable informant had seen petitioner in possession of a gun as recently as two months prior to the issuance of the warrant. The officers were shown two pictures of petitioner and his brother, and were told that petitioner drove a red Nissan Pathfinder. Backus v. State, 845 A.2d 515, 516 (Del. 2004).

During the execution of the search warrant, Corporal Terrance O'Connor was positioned outside the home with his drug sniffing dog, Sinta. After being informed that the house was secure, O'Connor brought Sinta back to his police car, which was parked several houses away from Floyd Backus' house. As O'Connor was driving up to Floyd's house, he saw a red Nissan Pathfinder pull up in front of the house, and

recognized petitioner as he exited the car. O'Connor immediately asked petitioner to place his hands on the side of the car and began a pat-down search for weapons. Petitioner then turned toward O'Connor, pushed him, and ran away. O'Connor chased petitioner and tackled him. Id. at 517. Another police officer, Charles Shepherd, observed the struggle between petitioner and O'Connor, and went to assist O'Connor. Once petitioner was handcuffed, Shepherd conducted a pat-down search of petitioner, and found a bag of cocaine weighing 134 grams. (D.I. 16, State's Response to Defendant's Motion for Postconviction Relief in State v. Backus, ID No. 0106010659)

Petitioner was arrested and subsequently indicted on charges of trafficking in cocaine, possession with intent to deliver cocaine ("PWITD"), use of a vehicle for keeping a controlled substance, second degree assault, and resisting arrest. On November 8, 2002, the Superior Court denied petitioner's motion to suppress the drug evidence. On November 25, 2002, a Superior Court jury convicted petitioner of trafficking in cocaine, possession of cocaine (as a lesser included offense of PWITD), and resisting arrest, but acquitted petitioner of the use of a vehicle for keeping a controlled substance and second degree assault charges. The Superior Court sentenced petitioner to the minimum mandatory time of fifteen years in prison for the trafficking offense and one year in prison, suspended for probation, for each of the possession and resisting arrest convictions. Petitioner filed a direct appeal, and the Delaware Supreme Court affirmed his conviction and sentence. Backus v. State, 845 A.2d 515 (Del. 2004).

In January 2005, petitioner filed a pro se motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), asserting one

claim that counsel provided ineffective assistance. The Superior Court denied the motion, and petitioner appealed. On appeal, the Delaware Supreme Court remanded the case to the Superior Court for further proceedings in light of the Delaware Supreme Court's earlier decision in Horne v. State, 887 A.2d 973 (Del. 2005), which found that the preferable practice in cases involving a first Rule 61 motion alleging ineffective assistance of counsel is for the Superior Court to obtain an affidavit from trial counsel. After obtaining an affidavit from defense counsel and a response from both the State and petitioner, the Superior Court again denied the Rule 61 motion. On post-conviction appeal, the Delaware Supreme Court affirmed the Superior Court's decision. Backus v. State, 900 A.2d 100 (Table), 2006 WL 1132091 (Del. Apr. 27, 2006).

### III. Standard of Review

If the highest state court has adjudicated the merits of a federal habeas claim, then a federal court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); Williams v. Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). A state court has adjudicated a claim on the merits for the purposes of 28 U.S.C. § 2254(d) if the state court "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." Rompilla v. Horn,

claim that counsel provided ineffective assistance. The Superior Court denied the motion, and petitioner appealed. On appeal, the Delaware Supreme Court remanded the case to the Superior Court for further proceedings in light of the Delaware Supreme Court's earlier decision in Horne v. State, 887 A.2d 973 (Del. 2005), which found that the preferable practice in cases involving a first Rule 61 motion alleging ineffective assistance of counsel is for the Superior Court to obtain an affidavit from trial counsel. After obtaining an affidavit from defense counsel and a response from both the State and petitioner, the Superior Court again denied the Rule 61 motion. On post-conviction appeal, the Delaware Supreme Court affirmed the Superior Court's decision. Backus v. State, 900 A.2d 100 (Table), 2006 WL 1132091 (Del. Apr. 27, 2006).

### III. Standard of Review

If the highest state court has adjudicated the merits of a federal habeas claim, then a federal court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); Williams v. Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). A state court has adjudicated a claim on the merits for the purposes of 28 U.S.C. § 2254(d) if the state court "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." Rompilla v. Horn,

355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), rev'd on other grounds by Rompilla v. Beard, 545 U.S. 374 (2005).

On federal habeas review, a district court must presume that a state court's implicit and explicit determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). This presumption is only rebutted by clear and convincing evidence to the contrary. Id.; Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner asserts two grounds for relief in his habeas application: (1) the police lacked probable cause to search him and seize the evidence found on his body, thereby violating his constitutional rights; and (2) counsel provided ineffective assistance by failing to object to, or seek a continuance of the suppression hearing as a result of, the State's late disclosure of an unexecuted warrant, and also by failing to adequately question the police at the suppression hearing.

### A. Claim One: Fourth Amendment Violation

In his first claim, petitioner contends that the police did not have a reasonable and articulable suspicion to believe that he was engaging in criminal activity and that he was armed. Consequently, petitioner argues that Officer O'Connor initiated an illegal pat-down search of his person, and that the 134 grams of cocaine seized as a result of Officer Shepherd's subsequent search should have been suppressed.

The record reveals that petitioner exhausted state remedies, and that the Delaware Supreme Court denied the claim as meritless. Nevertheless, despite the State Supreme Court's adjudication of this claim on its merits, the court does not need to review the claim under § 2254(d)(1) because the claim does not assert a proper basis for federal habeas relief under Stone v. Powell, 428 U.S. 465 (1976).

In Stone, the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone, 428 U.S. at 494; see also Wright v. West, 505 U.S. 277, 293 (1992)("We have also held . . . that claims under Mapp [evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review.") The "full and fair opportunity to litigate" requirement is satisfied if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure. See United States ex rel. Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978); United States ex rel. Petillo v. New Jersey, 562 F.2d 903, 906-07 (3d Cir. 1977).

Here, petitioner argues that he was not afforded a full and fair opportunity to litigate his Fourth Amendment claim in the state courts because defense counsel failed to sufficiently object to the use of an unexecuted search warrant issued approximately two months prior to the June 2001 search. However, the issue of counsel's performance is immaterial to Stone's "full and fair opportunity" analysis because it does

not constitute a structural defect.² See, e.g., Marshall v. Hendricks, 307 F.3d 36, 82 (3d Cir. 2002)(holding that "[a]n erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [Stone] bar.") ; Gilmore v. Marks, 799 F.2d 51, 56 (3d Cir. 1986), cert. denied, 479 U.S. 1041 (1987). The record in this case reveals that no structural defect in Delaware's system prevented petitioner from litigating his claim and, in fact, reveals that petitioner fully litigated the claim; petitioner filed a pre-trial motion in the Delaware Superior Court to suppress the cocaine seized from his automobile, the Superior Court denied the motion after holding an evidentiary hearing, and the Delaware Supreme Court affirmed the Superior Court's decision. Accordingly, the court will deny petitioner's Fourth Amendment claim as barred by Stone.

### B. Claim Two: Ineffective Assistance of Counsel

In claim two, petitioner contends that counsel provided ineffective assistance during the suppression hearing by failing to object to the State's late discovery of evidence or seek a continuance of the suppression hearing due to that late discovery, and by inadequately questioning Officers O'Connor and Shepherd during the suppression hearing. Petitioner presented his ineffective assistance of counsel claim to the Superior Court in his Rule 61 proceeding. Upon remand, the Superior Court denied the claim as meritless, and the Delaware Supreme Court affirmed that judgment. Consequently, pursuant to § 2254(d)(1), federal habeas relief will only be available if

---

²Moreover, as explained later in the text of the opinion, defense counsel did not provide ineffective assistance of counsel during petitioner's suppression hearing. See infra at pp. 6-13. Therefore, even if ineffective assistance of counsel could overcome the Stone bar, it does not do so in petitioner's case.

the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.[3]

The clearly established federal law governing ineffective assistance of counsel claims is the two-pronged standard enunciated by Strickland v. Washington, 466 U.S. 668 (1984) and its progeny. See Wiggins v. Smith, 539 U.S. 510 (2003). Under the first Strickland prong, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. Strickland, 466 U.S. at 688. The second Strickland prong requires the petitioner to demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." Id. at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. at 688. When, as here, the petitioner premises his ineffective assistance of counsel claims on his counsel's alleged failure to competently litigate Fourth Amendment issues, the petitioner demonstrates actual prejudice by proving "the Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." Kimmelman, 477 U.S. at 375.

It is well-settled that a petitioner has the burden of proving the facts in support of his ineffective assistance claim. Sistrunk v. Vaughn, 96 F.3d 666, 671 (3d Cir. 1996); Wells v. Petsock, 941 F.2d 253, 259-260 (3d Cir. 1991). The petitioner must make

---

[3]The Stone bar does not apply to ineffective assistance of counsel claims premised on an attorney's failure to raise Fourth Amendment issues. Kimmelman v. Morrison, 477 U.S. 365 (1986).

7

concrete allegations of actual prejudice and substantiate them or risk summary dismissal. See Wells, 941 F.2d at 259-260; Dooley v. Petsock, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." Strickland, 466 U.S. at 689.

Here, the Delaware Supreme Court analyzed the instant ineffective assistance of counsel claim within the Strickland framework, and concluded that petitioner failed to demonstrate the requisite prejudice. Thus, the Delaware Supreme Court's denial of the claim was not contrary to Strickland. See Williams, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

Furthermore, after reviewing the record, the court concludes that the Delaware Supreme Court's decision did not constitute an unreasonable application of Strickland. The court will consider petitioner's two complaints about counsel's performance in seriatim.

### 1. Failure to object to the late disclosure of the unexecuted search warrant or to request a continuance of the suppression hearing due to that late disclosure

Petitioner's first assertion involves a warrant to search petitioner's residence that police obtained approximately 2 months before his arrest. The warrant was never executed, and defense counsel was not informed of the warrant's existence until the night before petitioner's suppression hearing. The unexecuted warrant, dated April 12,

2001 ("April 2001 warrant"), detailed two specific instances where petitioner was observed selling cocaine in a controlled buy setting to a confidential informant cooperating with the police. The April 2001 warrant authorized the police to search petitioner's person and his residence.

Petitioner now contends that counsel should have moved for a continuance of the November 2002 suppression hearing due to the State's late disclosure of the April 2001 warrant. Reading this claim in conjunction with petitioner's Rule 61 motion, petitioner appears to assert that the State's late disclosure of the April 2001 warrant violated Brady v. Maryland, 373 U.S. 83 (1963), because the fact that the police never executed the warrant was exculpatory. Petitioner's argument appears to be that a continuance would have allowed defense counsel to prepare additional questions focusing on the exculpatory nature of the April 2001 warrant.

In its initial order, the Superior Court denied petitioner's Rule 61 motion because "it would not have been in [petitioner's] best interest to request a continuance, . . . [it] would have left him sitting in jail waiting for his attorney to prepare questioning on an issue that could not possibly assist him in prevailing on his suppression motion." (D.I. 16, State v. Backus, Cr. No. 0106010659, Order (Del. Super. Ct. Jan. 31, 2005)). On remand, after reviewing counsel's Rule 61 affidavit, the Superior Court again denied petitioner's Rule 61 motion, explaining that the non-execution of the April 2001 warrant was indicative of nothing more than that the police did not search petitioner's house. The Superior Court agreed with counsel's statement that the April 2001 warrant was more inculpatory than exculpatory because it detailed additional drug sales made by petitioner to confidential informants and, therefore, provided more probable cause for

9

the police to search petitioner during the June 2001 incident at issue during the suppression hearing. (D.I. 16, State v. Backus, ID No. 0106010659, Order (Del. Super. Ct. Feb. 10, 2006))

After reviewing counsel's Rule 61 affidavit within the context of the record and state court decisions, the court concludes the Delaware Supreme Court did not unreasonably apply Strickland in affirming the Superior Court's judgment. In his Rule 61 affidavit, counsel explained that petitioner never denied selling cocaine on the two occasions outlined in the April 2001 warrant and, therefore, counsel did not have a good faith basis for requesting a continuance. Counsel also explained that the testimony during the November 2002 suppression hearing indicated that the April 2001 search warrant was not executed because petitioner was not at home, and counsel viewed this explanation as legitimate and not, as suggested by petitioner, due to the fact that the police abandoned the search because they believed they would not have found evidence of any illegal activity on petitioner's part. Counsel also stated that the reason for not executing the April 2001 warrant was irrelevant to the question at issue during the November 2002 suppression hearing, namely, whether there was insufficient reasonable suspicion or probable cause to justify Officer O'Connor's initial detention of petitioner and Officer Shepard's pat-down search of petitioner in June 2001. (D.I. 16, Aff. of Trial Counsel Pursuant to Super. Ct. Crim. R. 61(g)(2), dated Dec. 2, 2005)

Although petitioner's complaint deals mainly with counsel's failure to capitalize on the fact that the police never executed the April 2001 warrant, the court notes that nothing in the record indicates that O'Connor even knew about the April 2001 warrant. Consequently, the existence of the warrant was not a factor in determining whether

10

O'Connor had probable cause to initially detain petitioner.

In short, when viewed in context with the facts of petitioner's case, counsel's reasons for not requesting a continuance or objecting to the late discovery of the April 2001 warrant were objectively reasonable. Therefore, the court concludes counsel's performance did not fall below the standard required by Strickland.

Additionally, the non-execution of the April 2001 warrant did not impact the issue of probable cause for the June 2001 search and seizure, because the search that took place in June 2001 was incident to a lawful arrest due to petitioner's attempt to flee the police. Thus, petitioner cannot demonstrate prejudice under Strickland because he cannot show that the evidence obtained from the June 2001 pat down search would have been excluded if counsel had either objected to the admission of the April 2001 warrant or moved for a continuance. Accordingly, the court will deny petitioner's first allegation regarding counsel's ineffective assistance.

### 2. Counsel's failure to adequately question the arresting officers during the suppression hearing

Petitioner also contends that counsel did not adequately question Officers O'Connor and Shepherd during the suppression hearing. Although petitioner's habeas application fails to explain why counsel's questioning was inadequate, petitioner's filings in his state collateral proceeding indicate that petitioner believes counsel inadequately questioned Officer O'Connor about his personal knowledge and recollection of the briefing which was held prior to petitioner's arrest, and that counsel failed to pose any questions to Officer Shepherd regarding his pat-down search and discovery of drugs on petitioner's person. (See generally D.I. 16) The Superior Court initially denied this

claim "as an empty, unsupported conclusion," and explained that counsel's questioning highlighted the issue of the officers' personal knowledge as a basis for reasonable suspicion. (D.I. 16, State v. Backus, Cr. No. 0106010659, Order (Del. Super. Ct. Jan. 31, 2005)) Then, on remand, after reviewing counsel's Rule 61 affidavit, the Superior Court further explained that counsel intentionally did not focus on the pat-down search because petitioner's "attempt to flee after the police officers stopped him . . . constituted probable cause to detain and search [petitioner], and [ ] a search incident to arrest is lawful." (D.I. 16, State v. Backus, ID No. 0106010659, Order at p.5 (Del. Super. Ct. Feb. 10, 2006))

After reviewing the record, the court concludes that the Delaware Supreme Court did not unreasonably apply Strickland in affirming the Superior Court's denial of this claim. In his Rule 61 affidavit, counsel explained that his questions for O'Connor were formulated to demonstrate that petitioner's actions upon exiting his vehicle did not corroborate the general allegations made at the briefing that petitioner was a drug dealer and that he was regularly armed. (D.I. 16, Aff. of Trial Counsel Pursuant to Super. Ct. Crim. R. 61(g)(2), dated Dec. 2, 2005, at p. 5) Counsel also explained that he wanted to demonstrate that O'Connor's recollection of the facts outlined during the pre-search briefing were rather hazy. The transcript of the suppression hearing reveals that counsel achieved these two goals. Upon counsel's cross-examination, O'Connor admitted that he could not recall the specifics of the basis of the police department's prior knowledge regarding petitioner's former possession of weapons. O'Connor also stated that, after the briefing, he thought the search was more likely to uncover the existence of narcotics rather than weapons. Counsel then questioned O'Connor about

12

his observations regarding petitioner's behavior after petitioner first exited his vehicle, and underscored the fact that petitioner initially cooperated and placed his hands on the car in response to O'Connor's request.

After reviewing counsel's cross-examination within the context of the state record, the court concludes that counsel's questioning fell within the objective standard of reasonableness required by Strickland. Counsel achieved his goal of underscoring O'Connor's recollection of the facts he learned at the pre-search briefing, as well as the fact that O'Connor did not observe any suspicious behavior on petitioner's part prior to his initial detention.

As for counsel's cross-examination of Officer Shepherd, counsel explained that he did not focus on Shepherd's pat-down search of petitioner because the search occurred after Shepherd observed petitioner struggling with O'Connor. As a result, Shepherd had sufficient probable cause to detain petitioner for resisting an officer which, in turn, rendered Shepherd's pat-down search of petitioner legal. Id. at p. 6; see United States v. Watson, 423 U.S. 411, 418 (1976)(warrantless arrest of defendant after committing crime in officer's presence does not violate Fourth Amendment); United States v. Robinson, 414 U.S. 218 (1973)(search incident to lawful arrest permitted). Consequently, rather than focus on the legal pat-down search, counsel decided to highlight the fact that Shepherd "could add nothing to the totality of the circumstances that justified [O'Connor's] initial detention of [petitioner] when he drove up to his brother's residence," and instead focused on the fact that Shepherd did not observe petitioner's actions in any fashion until he saw him wrestling on the ground with O'Connor. (D.I. 16, Aff. of Trial Counsel Pursuant to Super. Ct. Crim. R. 61(g)(2), dated

13

Dec. 2, 2005, at p. 6)

The main issue during the suppression hearing was whether O'Connor acted reasonably in detaining and beginning a pat-down search of petitioner upon petitioner's initial exit from his vehicle. In these circumstances, counsel's attempt to cast doubt on whether Officer O'Connor had probable cause to initially detain and search petitioner, and counsel's decision to avoid focusing on Officer Shepherd's subsequent legal pat-down search, constituted a logical strategy rather than deficient performance. Accordingly, the court will deny claim two because the Delaware Supreme Court's decision did not constitute an unreasonable application of Strickland.

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 application, the court must also decide whether to issue a certificate of appealability. See Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000). Additionally, if a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. Slack, 529 U.S. at 484.

The court concludes that petitioner's habeas application for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, petitioner's application for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.